STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. T.P.M., DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 7, 1983—Decided March 29, 1983.

Before Judges ARD, KING and McELROY.

*George C. Pappas* argued the cause for appellant.

*Stephen H. Monson,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

KING, J.A.D.

This appeal draws into question the constitutional validity of *N.J.S.A.* 2C:52–25, *L.*1979, *c.* 178, § 132, which makes the expungement chapter of the Code of Criminal Justice retroactive in all respects. *N.J.S.A.* 2C:52–25 states: "This chapter shall apply to arrests and convictions which occurred prior to, and which occur subsequent to, the effective date of this act [September 1, 1979]." Appellant contends that retroactive application violates the Ex Post Facto and Due Process Clauses of the United States Constitution. The Law Division judge rejected

appellant's federal constitutional challenge to the statute. We agree with the Law Division ruling and affirm. No state constitutional challenge is articulated by appellant but our ruling would be the same if it were.

The case arises against this factual background. On October 27, 1971 defendant was arrested for two drug offenses. One offense involved sale of one brick of hashish, weighing 15.1 grams, to an undercover State Trooper for $62. A second sale involved 1.9 grams. In January 1972 defendant was indicted in Monmouth County on two charges of sale of hashish, in violation of *N.J.S.A.* 24:21-19. In June 1972, pursuant to a plea agreement, defendant pled guilty to two counts of possession of controlled dangerous substances and received suspended, concurrent indeterminate sentences, two years probation and a $200 fine.

Defendant thereafter satisfactorily completed his two-year probation term and led an apparently exemplary life, save for a 1974 municipal court conviction for use of loud and offensive language. He had no criminal or juvenile record prior to the hashish sales. On November 13, 1981 defendant filed a verified petition for expungement of his criminal history records.

Defendant is now 31 years old, married and a father. He has supported himself and his family over the past decade as a house painter and car salesman. His expungement application was supported by strong endorsements from reputable members of the community, including the chief of police. Defendant's expungement application was motivated by a desire to apply for a real estate agent's license so he could join his father's agency.

Defendant contends that *N.J.S.A.* 24:21-28 should control his right to expungement. This was the expungement section of the Controlled Dangerous Substances Act of 1970 pertinent to his violations as a young offender and in effect when defendant first became eligible for expungement in 1974. Defendant contends that as a rehabilitated young offender he was entitled to expungement as a matter of right under *N.J.S.A.* 24:21-28 upon completing his successful probationary term. Although

our holding here does not compel us to explore that proposition, defendant's position may have merit. The problem is that *N.J.S.A.* 24:21–28 was repealed by *L.*1979, *c.* 178, § 147, effective September 1, 1979. Defendant presses his claim of a vested right to expungement under the repealed *N.J.S.A.* 24:21–28 because the present expungement statute relating to young drug offenders, *N.J.S.A.* 2C:52–5, precludes expungement where the total amount of hashish sold, distributed or possessed with intent to distribute exceeded five grams.

Our research discloses no authority to support defendant's contention that repeal of an expungement statute violates a constitutionally-protected interest. Indeed, we find little reported material of any kind on the subject.

Chapter 52 of the Code of Criminal Justice covering expungement of criminal records was adopted effective September 1, 1979 as one of the so-called "Consensus Amendments" to the Code of Criminal Justice which was initially enacted in August 1978. The legislative history discloses that by enactment of chapter 52 the Legislature intended to establish "a comprehensive statutory scheme for the expungement of criminal records," Allen, "Legislative History of Amendments to the New Jersey Code of Criminal Justice Passed Prior to the Effective Date of the Code," 7 *Crim.Just.Q.*, 41, 48 (1980), and spell out "an equitable system of expungement of indictable and nonindictable offenses as well as of arrest records," Senate Judiciary Comm. Statement to S. 3203 (1979), reprinted at 7 *Crim.Just.Q.* at 72. Before the enactment of chapter 52 there was no cohesive or uniform expungement practice in our criminal justice system.

We conclude that the Legislature had a right to overhaul the statutory expungement scheme in 1979 and make the new law retroactive in the interest of uniformity and efficiency without treading on the Due Process or Ex Post Facto Clauses of the Federal Constitution. A "statutory expectation" does not "mean that in addition to the full panoply of due process required to convict and confine" the expectation becomes a

protected liberty interest. *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex,* 442 *U.S.* 1, 14, 99 *S.Ct.* 2100, 2107, 60 *L.Ed.*2d 668 (1979) (possibility of parole not a constitutionally protected right); *see Jago v. Van Curen,* 454 *U.S.* 14, 102 *S.Ct.* 31, 70 *L.Ed.*2d 13 (1981) (rescission of parole without hearing not violative of due process); *Connecticut Bd. of Pardons v. Dumschat,* 452 *U.S.* 458, 101 *S.Ct.* 2460, 69 *L.Ed.*2d 158 (1981) (expectation of sentence commutation did not create liberty interest); *Meachum v. Fano,* 427 *U.S.* 215, 96 *S.Ct.* 2532, 49 *L.Ed.*2d 451, reh. den. 429 *U.S.* 873, 97 *S.Ct.* 191, 50 *L.Ed.*2d 155 (1976) (prison transfers do not infringe a protected liberty interest). If there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz, supra,* 442 *U.S.* at 7, 99 *S.Ct.* at 2104, we cannot hold that a due process right inheres in a particular legislative expungement scheme. In light of these authorities, we conclude that an expungement remedy should receive no higher protection which would thus preclude legislative revision. Legislation which readjusts rights and burdens is not unconstitutional solely because it upsets settled expectations. *Usery v. Turner Elkhorn Mining Co.,* 428 *U.S.* 1, 16, 96 *S.Ct.* 2882, 2892, 49 *L.Ed.*2d 752 (1976).

 Nor can we say that the result in this case is so "harsh and oppressive" that due process compels a finding that retrospectivity is unconstitutional. Defendant has neither applied for nor been denied a real estate license. His conviction 11 years ago for sale of hashish does not automatically disqualify him for a real estate agent's license under *N.J.S.A.* 45:15–12.1 which, in pertinent part, states

> No license shall be issued by the commission to any person known by it to have been, within five years theretofore, convicted of forgery, embezzlement, obtaining money under false pretenses, extortion, criminal conspiracy to defraud, or other like offense or offenses, or to any copartnership of which such person is a member, or to any association or corporation of which said person is an officer, director, or employee, or in which as a stockholder such person has or exercises a controlling interest either directly or indirectly.

Further, any threat of disqualification must be weighed in light of policy considerations manifest in the Rehabilitated Convicted

Offenders Act, *N.J.S.A.* 2A:168A–1 *et seq.* Any permanent prejudice to defendant is speculative at this time, certainly not grave enough to compel striking down an act of the Legislature. His predicament is also largely self-induced by his delay from date of eligibility for expungement in 1974 to repeal in 1979.

■° The Federal Constitution and our State Constitution prohibit the Legislature from enacting *ex post facto* laws. *U.S. Const., Art.* I, § 10, cl. 1; *N.J. Const.* (1947), *Art.* IV, § VII, par. 3. Generally, any statute which makes a prior act, that was innocent when committed, a crime, which makes punishment for a crime more burdensome after its commission, or which deprives a defendant of a defense available when the act was committed, constitutes an *ex post facto* law. *See Dobbert v. Florida,* 432 *U.S.* 282, 292, 97 *S.Ct.* 2290, 2297, 53 *L.Ed.*2d 344, reh. den. 434 *U.S.* 882, 98 *S.Ct.* 246, 54 *L.Ed.*2d 166 (1977); *Beazell v. Ohio,* 269 *U.S.* 167, 169–170, 46 *S.Ct.* 68, 70 *L.Ed.* 216 (1925). The purpose of the prohibition is to secure substantial personal rights against arbitrary and oppressive legislation. *Dobbert, supra,*432 *U.S.* at 293, 97 *S.Ct.* at 2298; *State v. Davis,* 175 *N.J.Super.* 130, 147 (App.Div.), certif. den. 85 *N.J.* 136 (1980). The Constitution's drafters sought to assure that individuals had fair warning of the impact of legislation and could rely on its meaning. *Weaver v. Graham,* 450 *U.S.* 24, 28–29, 101 *S.Ct.* 960, 963–64, 67 *L.Ed.*2d 17 (1981).

■ To accomplish its purpose this constitutional provision has been broadly construed. In a recent case the United States Supreme Court invalidated a state statute reducing a convicted prisoner's accumulation of "gain time" credits when the crime and sentencing took place before the effective date of the new statutory scheme. *Weaver, supra* at 28, 101 *S.Ct.* at 963. The court stated that to be *ex post facto* a criminal or penal law must be retrospective in effect and must disadvantage the offender affected. *Id.* at 29, 101 *S.Ct.* at 964. The Clause prohibits any law which in relation to the past offense or its punitive consequences, alters the situation of the offender to his

disadvantage. *State v. Rowe*, 116 *N.J.L.* 48 (Sup.Ct.1935), aff'd 122 *N.J.L.* 466 (E. & A.1939); *State v. Chapman*, 187 *N.J.Super.* 474 (App.Div.1982).

The Clause has several elements. It constrains the state only with regard to the imposition of criminal punishment. *In re Garay*, 89 *N.J.* 104, 111 (1982); *In re Kaplan*, 178 *N.J.Super.* 487, 493 (App.Div.1981). The statute in question must be retrospective, altering the legal consequences of acts completed before its effective date. *Weaver, supra* 450 *U.S.* at 29, 101 *S.Ct.* at 964. To disadvantage the offender the statute need not impair a vested right. The alteration of penal provisions established at the grace of the Legislature is sufficient if the burden on the defendant is made more onerous. *Id.* at 29–30, 101 *S.Ct.* at 964–65. The Clause does not, however, apply to procedural changes even when they disadvantage the offender. *Weaver, supra* at 29, n. 12, 101 *S.Ct.* at 964, n. 12; *Dobbert, supra* 432 *U.S.* at 293, 97 *S.Ct.* at 2298. But a procedural form will not protect a substantive change. *Weaver, supra* at 29, n. 12, 101 *S.Ct.* at 964, n. 12. The Clause also does not prohibit legislative control of remedies which do not affect substance. *Dobbert, supra* 432 *U.S.* at 293, 97 *S.Ct.* at 2298. *Davis, supra* 175 *N.J.Super.* at 147.

The application of *N.J.S.A.* 2C:52–5 is clearly retroactive and it prevents removal of the civil disability inhering in a criminal record. The effect of the statute may be construed, as defendant asserts, to deprive him of the opportunity to pursue a career. Exclusion from a profession or avocation for past acts has been considered a sufficient deprivation to invoke protection as a bill of attainder and *ex post facto* law. *See Ex parte Garland*, 71 *U.S.* (4 Wall.) 333, 377, 18 *L.Ed.* 366 (1867).

But the civil deprivation suffered in *Garland* was directly established by the statute under attack, which was passed after the Civil War and effectively prohibited confederate military and political leaders from practicing law in the federal courts. Here any injury allegedly sustained by defendant is speculative and indirect. Moreover, the expungement statute is a remedial,

not a punitive statute. It does not prolong defendant's punishment, as the parole credit reduction did in *Weaver, supra*. The Supreme Court in *Weaver* reserved judgment on whether the parole credits were part of the sentence, because eligibility for parole is always a consideration during plea negotiations or sentencing. *Supra* 450 *U.S.* at 32, 101 *S.Ct.* at 966. An expungement statute is distinguishable; the possible availability of an expungement is really not a sentencing consideration and relates to neither the form of sentence nor the extent of punishment. The unconstitutional statutory reduction in *Weaver, supra* at 25–26, 101 *S.Ct.* at 962, applied to the prison credits defendant had already earned. Defendant's interest in expungement here was only in obtaining a potential remedy, not retaining something which had already inured to his benefit. The result here might differ if the Legislature had attempted to revoke an expungement of criminal records which had already been granted by a court.

The existence of a criminal record is simply a fact of life, not part of the sentence and punishment. Defendant had no constitutionally protected right to assume that the legislative remedy of expungement was immutable.

Affirmed.