250 N.J. Super. 39 (1991)
593 A.2d 362
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALFRED RICCI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 27, 1991.
Decided July 19, 1991.
*41 Before Judges KING, LONG and R.S. COHEN.
Yaron Helmer argued the cause for defendant (Slater, Tenaglia & Helmer, attorneys).
Catherine A. Foddai, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, attorney).
KING, P.J.A.D.
This appeal questions the constitutionality of defendant's conviction for violation of the so-called "kingpin" section of our narcotics "trafficking network" statutes which mandates a life sentence with a mandatory term of 25 years without parole. N.J.S.A. 2C:35-3; L. 1987, c. 106, § 1, effective on July 9, 1987. Defendant contends that the judge committed "plain error" and violated the Ex Post Facto Clause,[1] in not specifically instructing the jury that he must be found guilty of the predicate acts which invoke the "kingpin" sanctions after the effective date of the Act, and not simply "during the course of the conspiracy" which the State claimed began 11 months before the effective date of the Act and persisted for about a month or so after that date. We agree, reverse the conviction on the "kingpin" count only, and remand for a new trial.
*42 In October 1987 defendant Alfred Ricci was indicted in a two-count indictment for narcotics violations. The first count charged a conspiracy between August 1986 and August 1987 to knowingly or purposely manufacture, distribute, dispense, possess or to have under his control with intent to distribute, manufacture or dispense methamphetamine in violation of N.J.S.A. 2C:5-2 and N.J.S.A. 2C:35-5a(1). The second count charged a conspiracy as an organizer, supervisor, financier, or manager, to engage for profit in a scheme or course of conduct to unlawfully manufacture, distribute, dispense, bring into or transport in this State methamphetamine in violation of N.J.S.A. 2C:35-3, the so-called "kingpin" statute. Seventeen other defendants were indicted separately on these same charges arising out of the conspiracy alleged to have occurred between August 1986 and August 1987. The indictments were later joined and the other defendants either pled guilty or obtained dismissals. The defendant-appellant Ricci eventually was tried alone. Two coconspirators, Pasha and Brown, testified against defendant in exchange for favorable dispositions on their charges.
The jury convicted defendant Ricci on both counts. The judge imposed a sentence of life with a 25-year parole ineligibility term under the "kingpin" statute. N.J.S.A. 2C:35-3 (Count Two). On the routine conspiracy count, the judge imposed a concurrent five-year term. N.J.S.A. 2C:35-5a(1) (Count One). Defendant's motion to reduce his sentence failed.
Defendant raises numerous alleged errors, mostly as "plain error," under ten point headings on this appeal. They include: (1) the noted ex post facto challenges because of the effective date of the "kingpin" statute, July 9, 1987, during the term of the conspiracy, (2) error in the admissibility of certain evidence, (3) termination or abandonment of the conspiracy as a matter of law, (4) a fatal defect in the indictment, (5) prosecutorial misconduct (6) ineffective assistance of counsel, (6) and Cruel and Unusual Punishment, Due Process and Equal Protection Clause challenges. We conclude that all are clearly without merit save *43 one point. R. 2:11-3(e)(2). As to that point, as noted, we reverse and remand the conviction under the "kingpin" statute which carries the severely enhanced penalty of life with a mandatory 25-year term. Defendant may be retried on that count.
On his persuasive point, defendant contends that the jury "did not receive a limiting charge and it cannot be determined whether the jury determined that defendant violated N.J.S.A. 2C:35-3 and N.J.S.A. 2C:35-5a(1), before the effective date [of the statute], thus prejudicing the defendant." The point was concededly "not raised below." R. 2:6-2(a)(1). We entertain the point because of the obvious impact of the sentence differential on this defendant. R. 2:10-2; State v. Melvin, 65 N.J. 1, 18-19, 319 A.2d 450 (1974) (test is "real possibility of injustice").
This case involved a conspiracy to manufacture and distribute methamphetamine ("speed") in the Delaware Valley. The conspiracy focused on an apartment in Washington Township, Gloucester County, New Jersey and defendant's restaurant and apartment at 19th and Snyder Streets in South Philadelphia. The State claimed that the term of the conspiracy embraced about one year, from August 1986 to August 1987.
Our concern is energized by the effective date of the "kingpin" statute, July 9, 1987, which triggered enhanced penalties for an "organizer, supervisor, financier or manager" of a drug conspiracy. N.J.S.A. 2C:35-3. The "kingpin" statute was part of the "Comprehensive Drug Reform Act of 1986," N.J.S.A. 2C:35-1 to -23. The Act was conceived to combat the perceived increasing menace of narcotics traffic in this State. N.J.S.A. 2C:35-1.1(c) and (d).
The evidence presented by the State established the inception of the conspiracy in the summer of 1986 when Brown and Pasha first met Ricci in his bar in South Philadelphia and discussed manufacturing "speed." Equipment was secured and the cohorts scouted for a manufacturing site. Deliveries of *44 "speed" from other sources were arranged and completed as part of the conspiracy among and between Ricci, Brown, Pasha and others. In the spring of 1987 the New Jersey authorities, now alerted by informants, obtained a telephone pen register and a tap on Brown's apartment in Washington Township. The tap remained until August 11, 1987. Raids were conducted in early August in both New Jersey and Pennsylvania. Ricci was arrested on August 13, 1987. We conclude from our review of the record that the jury could reasonably have found that the evidence clearly established an interstate conspiracy to manufacture and distribute "speed" with defendant Ricci at the center of the conspiracy.
We are not impressed with defendant's contention that the "kingpin" statute, N.J.S.A. 2C:35-3, effective July 9, 1987, is completely inoperative and ineffectual concerning the charge of a continuing conspiracy from August 1986 through August 1987. We agree with United States v. Johnson, 537 F.2d 1170 (4th Cir.1976), treating a similar situation of continuing conspiracy under the federal Comprehensive Drug Abuse Prevention and Control Act of 1970. The conspiracy in Johnson began on June 1, 1970 and continued until November 3, 1972; the pertinent amendment was effective on May 1, 1971. We concur with the Fourth Circuit which said: "Although the conspiracy and the continuing criminal enterprise were in operation before the effective date of the statutes, many of the overt acts occurred after May 1, 1971. When a statute takes effect after a conspiracy is formed, its application to the ongoing conspiracy does not violate the ex post facto prohibition of the constitution." Id. at 1175. See also United States v. Torres, 901 F.2d 205, 226-227 (2nd Cir.1990); United States v. Ferrara, 458 F.2d 868, 874 (2nd Cir.), cert. denied, 408 U.S. 931, 92 S.Ct. 2498, 33 L.Ed.2d 343 (1972).
The difficulty arises from the judge's instructions here on the time-span of the conspiracy. The jury was instructed generally on Count I as to the conspiracy which was alleged to *45 have existed "on various dates from August 1986 through August 1987." As to Count Two  the "kingpin" charge  the jury was similarly instructed without objection. No distinction was made concerning the defendant's conduct before and after the effective date of the "kingpin" statute, July 9, 1987. The jury was not told specifically that it must find that defendant committed overt acts in conspiring with Brown, Pasha and others after that date as "an organizer, supervisor, financier or manager," in order to convict under Count Two.
This precise question arose in U.S. v. Torres, supra, where the Second Circuit also reversed the "kingpin" conviction. There three defendants challenged the application of the federal "super kingpin" statute, 21 U.S.C.A. § 848 (1988), where they had received life sentences without parole. The effective date of the enhanced life-sentence statute was October 27, 1986. The period of the conspiracy subject of the indictment and the instruction to the jury was from June 24, 1986 to June 23, 1987. There was no instruction specifically telling the jury that their verdict must include the finding that some predicate acts of a "kingpin" nature, i.e., participation as a "principal administrator, organizer or leader" in a distribution scheme involving the requisite quantity of drugs and gross receipts, occurred after the effective date of the act which severely enhanced their punishment from ten years to life without parole. Indeed, the instruction as given used the expression that the defendant was guilty if a principal "sometime during the 12-month period." As the Second Circuit said, "the problem presented here, however, is that both the pertinent instruction and the verdict form allowed the [defendants] to be subjected to the enhanced, mandatory life sentence imposed by section 848(b) if they acted as principal administrators, organizers or leaders of the organization" at any time during the one-year period although section 848(b) did not become effective until six months after the conspiracy began. U.S. v. Torres, supra, 901 F.2d at 227.
The Second Circuit rejected the constitutionality of the "kingpin" conviction in this circumstance, notwithstanding the defendant's *46 failure to properly object to the instruction to the jury. See Fed.R.Crim.P. 30.
This is impermissible, in our view, because such an application of section 848(b) would "`make [] more onerous the punishment for crimes committed before its enactment.'" Miller v. Florida, 482 U.S. 423, 435, 107 S.Ct. 2446, 2454, 96 L.Ed.2d 351 (1987) (quoting Weaver v. Graham, 450 U.S. 24, 36, 101 S.Ct. 960, 968, 67 L.Ed.2d 17 (1981)). Congress is barred from enacting legislation which imposes such a result by the ex post facto clause of U.S. Const. art. I, § 9, cl. 3, and states are so barred by the ex post facto clause of id, art. I, § 10, cl. 1. Since "`the principle on which the [ex post facto] clause is based  the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties  is fundamental to our concept of constitutional liberty,'" United States v. Brown, 555 F.2d 407, 419 (5th Cir.1977) (quoting Marks v. United States, 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977)), cert. denied, 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978), courts are similarly constrained by the due process clauses of the fifth and fourteenth amendment, id. [U.S. v. Torres, 901 F.2d at 227].
The Second Circuit rejected the government's argument "that under any conceivable view of the evidence consistent with the jury's verdict, the [defendants] functioned as principal administrators, organizers or leaders after October 27, 1986 so that any error in the instruction and verdict forms was harmless." Id. The court rejected the "harmless error" claim despite its conclusion that "[a]s the government strenuously contends, it is quite unlikely that the jury would have found a significant difference in the character of appellants' relationship to, and leadership of the Torres Organization before and after October 27, 1986." Id. at 228.
This view of the evidence is also true of the case before us. Most likely Ricci's activities would have satisfied the jury that his qualitative and quantitative contributions to the conspiracy were as a "leader" both before and after July 9, 1987. But we can not be sure. Indeed, part of Ricci's contention at trial was that he withdrew from the conspiracy either in February or July 1987. The jury might, if so instructed, possibly have found that he did not participate, at least as a leader or "kingpin," after the relevant date. We will never know.
Under these circumstances, whatever the likelihood that a properly instructed jury would have ruled against defendant *47 Ricci on Count Two as a leader or "kingpin" after July 9, 1987, the life sentence with a 25-year parole disqualifier cannot stand where there was an ex post facto violation in the jury instruction as actually given. The conviction on Count Two must be vacated; we reverse and remand for a new trial as to Count Two. The conviction and sentence on Count One is affirmed.
NOTES
[1] We consider the federal and state ex post facto clauses coextensive for purposes of our analysis. Our courts have not yet, to our knowledge, treated them otherwise. U.S. Const., Art. I, § 10, cl. 1; N.J. Const. (1947), Art. IV, § VII, par. 3; State v. Young, 77 N.J. 245, 252-254, 390 A.2d 556 (1978) (applied to state judicial decision as well as legislative acts); see State v. Chapman, 187 N.J. Super. 474, 477, 455 A.2d 514 (App.Div. 1972); see also State v. T.P.M., 189 N.J. Super. 360, 366, 460 A.2d 167 (App.Div. 1983).