**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0363-22

IN THE MATTER OF
THE EXPUNGEMENT
APPLICATION OF K.M.G.
_____

APPROVED FOR PUBLICATION

November 8, 2023

APPELLATE DIVISION

Argued October 3, 2023 – Decided November 8, 2023

Before Judges Sumners, Rose and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. XP-21-002190.

Monica do Outeiro, Assistant Prosecutor, argued the cause for appellant State of New Jersey (Raymond S. Santiago, Monmouth County Prosecutor, attorney; Monica do Outeiro, of counsel and on the brief).

Tara K. Walsh argued the cause for respondent K.M.G. (Ansell Grimm & Aaron, PC, attorneys; Robert A. Honecker, Jr., and Tara K. Walsh, of counsel and on the brief).

The opinion of the court was delivered by

SUMNERS, JR., C.J.A.D.

In this appeal of first impression, we must determine whether the "clean slate" statute, N.J.S.A. 2C:52-5.3, which permits an expungement of a New Jersey criminal record if ten years have passed "from the date of the person's

most recent conviction," applies to a conviction from another state. (Emphasis added). The trial court entered an order expunging petitioner's New Jersey criminal record after determining her 2017 Virginia misdemeanor conviction did not preclude eligibility for expungement under the "clean slate" statute because an out-of-state conviction does not constitute a "most recent conviction." The State contends the trial court erred in its interpretation of the "clean slate" statute, contending petitioner's Virginia conviction must be considered, and because it was entered within ten years of her petition for expungement, her petition should have been denied.

We reverse because the text of the "clean slate" statute and related expungement statutes do not support the trial court's interpretation to preclude consideration of an out-of-state conviction from the phrase "most recent conviction." Moreover, such interpretation defies common sense given the "clean slate" statute's purpose to expunge a criminal record of an applicant who has not violated the law within ten years of their last New Jersey conviction. Consequently, petitioner's Virginia offense presently disqualifies her from expungement of her New Jersey criminal record under the "clean slate" statute.

I.

A-0363-22

On June 15, 2021, petitioner, a Virginia resident, filed an application with the Law Division seeking an ordinary expungement under N.J.S.A. 2C:52-6, for a 1988 arrest for forgery,[1] and under N.J.S.A. 2C:52-2, for a 1991 conviction for third-degree conspiracy to commit burglary and fourth-degree theft resulting in a three-year probation sentence. The State objected, claiming petitioner failed to include an "out-of-state arrest and/or charge" of unknown disposition.

On July 15, 2022, petitioner filed an amended petition, explaining that in 2016, she was arrested and charged in Virginia with "Attempt to Purchase a Firearm Without a Permit" and "False History on Criminal History Consent Form." Petitioner eventually pled guilty in 2017 to a Class 1 misdemeanor "Concealed Weapon" charge, Va. Code Ann. § 18.2-308(a), resulting in a twelve-month suspended jail sentence.[2] She professed she innocently affirmed

---

[1] No conviction resulted.

[2] In New Jersey, "[a]n offense defined by the laws of any other jurisdiction" that is punishable by "a sentence of imprisonment of one year or less, but more than 30 days, . . . shall be considered in this State to be a disorderly persons offense when a reference is made by this code, or by any other statute of this State, to such offense." N.J.S.A. 2C:1-4(b)(2)(a). Disorderly persons offenses and "crimes" are distinct. N.J.S.A. 2C:1-4(b)(1). An out-of-state offense punishable by more than one year imprisonment "shall be considered in [New Jersey] to be a crime." N.J.S.A. 2C:1-4(a)(2).

on her handgun purchase application that she had never been convicted of a felony. Petitioner claimed she believed her 1991 New Jersey conviction had been automatically expunged.

Petitioner argued before the trial court that "her Virginia conviction should not be considered a criminal conviction." She does not repeat that argument here. Indeed, her Virginia offense does not qualify as a "crime," see N.J.S.A. 2C:1-4(a)(2), but as a "disorderly persons offense" under New Jersey law, see N.J.S.A. 2C:1-4(b)(2)(a).[3] There is no basis to read "most recent conviction" to refer only to convictions for "crimes."

---

If not for her Virginia conviction, it appears petitioner would have been eligible for ordinary expungement under paragraph three of N.J.S.A. 2C:52-2(a), which provides that a person may present an expungement application if she has been "convicted of multiple crimes . . . all of which are listed in a single judgment of conviction," but not if she has "any subsequent conviction for another crime or offense in addition to those convictions included in the expungement application, whether any such conviction was within this State or any other jurisdiction." (Emphasis added). Had she been convicted of only one crime in New Jersey, she might have been eligible under paragraph one, which requires that the petitioner does not have "any subsequent conviction for another crime, whether within this State or any other jurisdiction." N.J.S.A. 2C:52-2(a). Petitioner's Virginia conviction was not for a "crime," but a "disorderly persons offense." See N.J.S.A. 2C:1-4(b)(1).

[3] This offense has no bearing on the timeliness of petitioner's "clean slate" application. As will be discussed later, the "clean slate" statute provides for the expungement of disorderly persons offenses, too, not just crimes. N.J.S.A. 2C:52-5.3.

A-0363-22

Petitioner requested that the trial court consider the "facts and circumstances surrounding" her Virginia conviction and "grant [her] expungement at the present time, rather than denying [her] application only to resubmit" when the 2017 Virginia conviction satisfies the ten-year conviction-free waiting period sometime in 2027. The State objected, arguing petitioner was ineligible for ordinary expungement because the Virginia conviction was not outside the ten-year window to permit a "clean slate" expungement under N.J.S.A. 2C:52-5.3(b).

On September 7, 2022, the trial court issued an order and written opinion granting petitioner's expungement application. The court determined the Virginia conviction did not make petitioner's expungement application premature, and that she otherwise satisfied the "clean slate" eligibility requirements of N.J.S.A. 2C:52-5.3.

The trial court reasoned the Virginia conviction did not constitute a "most recent conviction" under N.J.S.A. 2C:52-5.3 because it was an out-of-state conviction. The court interpreted the "most recent conviction" language of the "clean slate" statute's ten-year time requirement to exclude an out-of-state conviction. The court explained the phrase "most recent conviction" is used twice in N.J.S.A. 2C:52-5.3(b), and the second usage necessarily refers to a New

Jersey conviction where it states: "The person shall submit the expungement application to the Superior Court in the county in which the most recent conviction for a crime or offense was adjudged . . . ." The court determined that a petitioner could not file for a "clean slate" expungement in another jurisdiction, so the phrase "'most recent conviction' . . . in that sentence must be referring to a New Jersey conviction." Citing De Flesco v. Mercer County Board of Elections, 43 N.J. Super. 492, 499 (App. Div. 1957) (citation omitted), it relied on "the presumption that a word or phrase is used in the same sense throughout [a] statute," finding that "since the phrase 'most recent conviction' in the third sentence of subsection (b) is clearly limited to a New Jersey conviction, the same phrase in the first sentence regarding the ten-year waiting period must also be limited to a New Jersey conviction." The court held "[t]o conclude otherwise would require [it] to conclude, which it cannot, that the [L]egislature included contradictory language within the subsection of a statute."

The trial court found further support for disregarding petitioner's Virginia conviction by ruling: (1) another "potential starting point[] of the waiting period," "the date on which the petitioner made payment of any 'court-ordered financial assessment,'" is limited to penalties related to New Jersey convictions, as the statute defines "court-ordered financial assessment" to mean any

6

"financial assessment imposed by the court as part of the sentence <u>for the conviction or convictions that are the subject of the application</u>," N.J.S.A. 2C:52-5.3(b) (emphasis added); (2) "convictions" in the phrase "a duly verified petition as provided in N.J.S.A. 2C:52-7 praying that all the person's convictions . . . be expunged," N.J.S.A. 2C:52-5.3(b), "must be limited to New Jersey convictions"; and (3) the Legislature expressly considered out-of-state convictions in defining eligibility in the other expungement statutes, but failed to include similar language in defining the waiting period in the "clean slate" statute.

## II.

Before us, the State argues the trial court misinterpreted the "clean slate" statute. Before addressing the specifics of the State's challenge, we first lay out the principles governing statutory interpretation and the "clean slate" statute's requirements for expungement.

## A.

Our review of statutory interpretation is "de novo, unconstrained by deference to the decisions of the trial court." <u>State v. Grate</u>, 220 N.J. 317, 329 (2015) (citing <u>State v. Drury</u>, 190 N.J. 197, 209 (2007)). In doing so, "[w]e 'must follow the well-settled rules of statutory construction "to determine and

give effect to the Legislature's intent."'" In re R.K., 475 N.J. Super. 535, 540-541 (App. Div. 2023) (quoting In re H.D., 241 N.J. 412, 418 (2020)). If "a statute's plain language is clear, we apply that plain meaning and end our inquiry." Id. at 541 (quoting Garden State Check Cashing Serv., Inc. v. Dep't of Banking & Ins., 237 N.J. 482, 489 (2019)). The Legislature's words and phrases are to be construed within the context of "related provisions so as to give sense to the legislation as a whole" and given their "generally accepted meaning . . . unless that meaning is 'inconsistent with the manifest intent of the [L]egislature.'" State v. Courtney, 243 N.J. 77, 85 (2020) (first quoting Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018); and then quoting N.J.S.A. 1:1-1).

We recognize that courts must neither "rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." R.K., 475 N.J. Super. at 543 (quoting State v. Frye, 217 N.J. 566, 575 (2014)). Nonetheless, even though a statute may be clear and unambiguous, we have the responsibility to avoid "a literal interpretation [that] would create a manifestly absurd result, contrary to public policy, [such that] the spirit of the law should control." Frye, 217 N.J. at 575 (quoting Turner v. First Union Nat'l Bank, 162

8

N.J. 75, 84 (1999)).  This court recently recognized our "rules of construction are subordinate to [the] . . . proposition" that legislation should not be construed to create an absurd result.  State v. W.C., 468 N.J. Super. 324, 331 (App. Div. 2021) (quoting State v. Provenzano, 34 N.J. 318, 322 (1961)).  Thus "when . . . a plain reading of the statute leads to an absurd result, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'"  Courtney, 243 N.J. at 86 (quoting State v. Rodriguez, 238 N.J. 105, 114 (2019)) (internal quotation marks omitted).

B.

Expungement in New Jersey is governed by N.J.S.A. 2C:52-1 to -32.1, which was "'intended to establish "a comprehensive statutory scheme for the expungement of criminal records"' and to create 'an equitable system of expungement of indictable and nonindictable offenses as well as of arrest records.'"  State v. Gomes, 253 N.J. 6, 21 (2023) (quoting State v. T.P.M., 189 N.J. Super. 360, 364 (App. Div. 1983)).  Eligibility for expungement depends on the record to be expunged:  indictable offenses, N.J.S.A. 2C:52-2; disorderly and petty disorderly persons offenses, N.J.S.A. 2C:52-3; local ordinances, N.J.S.A. 2C:52-4; and juvenile matters, N.J.S.A. 2C:52-4.1.  In 2019, our Legislature reformed the expungement system, in pertinent part, "including

9

'clean slate' expungement for those who had not committed an offense in ten years, N.J.S.A. 2C:52-5.3." Gomes, 253 N.J. at 22.

This appeal centers around the interpretation of the "clean slate" statute, which was enacted to make expungement available to those who are "not otherwise eligible to present an expungement application pursuant to any other section of chapter 52." N.J.S.A. 2C:52-5.3(a). Primary focus is on N.J.S.A. 2C:52-5.3(b), which provides:

> The person, if eligible, <u>may present the expungement application after the expiration of a period of ten years from the date of the person's most recent conviction,</u> payment of any court-ordered financial assessment, satisfactory completion of probation or parole, or release from incarceration, whichever is later. The term "court-ordered financial assessment" as used herein and throughout this section means and includes any fine, fee, penalty, restitution, and other form of financial assessment imposed by the court as part of the sentence for the conviction or convictions that are the subject of the application, for which payment of restitution takes precedence in accordance with chapter 46 of Title 2C of the New Jersey Statutes. The person shall submit the expungement application to the Superior Court in the county in which the most recent conviction for a crime or offense was adjudged, which includes a duly verified petition as provided in [N.J.S.A.] 2C:52-7 praying that all the person's convictions, and all records and information pertaining thereto, be expunged. The petition appended to an application shall comply with the requirements set forth in [N.J.S.A.] 2C:52-1 et seq.
>
> [(Emphasis added).]

The "clean slate" statute further provides a person may apply to expunge any number of New Jersey convictions for crimes, disorderly persons offenses, and/or petty disorderly persons offenses, so long as the person has never been convicted of a more serious crime listed in N.J.S.A. 2C:52-2(b), which are not subject to expungement, e.g., sexual assault, or of certain drug offenses described in N.J.S.A. 2C:52-2(c). N.J.S.A. 2C:52-5.3(a). Additionally, the eligibility bar against those who have previously had a conviction expunged does not apply to "clean slate" expungements. N.J.S.A. 2C:52-5.3(a); N.J.S.A. 2C:52-14(e).

Compared to the ordinary expungement pathway, "clean slate" expungement has softer eligibility requirements but a harsher waiting period of ten years. See N.J.S.A. 2C:52-2(a) (imposing a five-year waiting period for ordinary expungement); In re LoBasso, 423 N.J. Super. 475, 491 (App. Div. 2012) (holding the waiting period under N.J.S.A. 2C:52-2 "was to increase the likelihood that a beneficiary of expungement had permanently turned away from criminal activity and will not re-offend"). "Clean slate" petitions are otherwise subject to much of the same requirements as ordinary expungement petitions. While the "clean slate" statute makes expungement available to those who are "not otherwise eligible to present an expungement application pursuant to any

other section of chapter 52 . . . or other section of law," N.J.S.A. 2C:52-5.3(a), it also states that a "clean slate" petition "shall comply with the requirements set forth in" chapter 52, N.J.S.A. 2C:52-5.3(b). Additionally, while N.J.S.A. 2C:52-14(e) expressly exempts "clean slate" expungement petitions from the previous expungement bar, the other grounds for denial of expungement listed in N.J.S.A. 2C:52-14 do not contain such exemptions. N.J.S.A. 2C:52-14(a) to (d).

## III.

The State essentially accepts the trial court's reading as to the plain meaning of the statute—out-of-state convictions are excluded from the phrase "most recent conviction"—but argues that it is not the best indicator of the Legislature's intent in this appeal. In particular, the State argues the trial court's interpretation should be rejected because it contradicts the purpose of New Jersey's expungement statutes—to give "relief to the reformed offender." See N.J.S.A. 2C:52-32 (emphasis added). Expungement in view of petitioner's 2017 conviction, according to the State, "leads to inconsistent and absurd results."

## A.

Initially, we point out our disagreement with the trial court, and for that matter, the State's concession that based on a plain meaning interpretation of the "clean slate" statute, "conviction" in the phrase "most recent conviction" is

limited to <u>New Jersey convictions</u>. Because the "clean slate" statute allows for the expungement of disorderly and petty disorderly persons offenses, not just crimes, "conviction" in the phrase "most recent conviction" means a conviction of a crime or disorderly persons or petty disorderly persons offense. When the words "crime," "disorderly persons offense," or "petty disorderly persons offense" are used in New Jersey statutes, they ordinarily include out-of-state offenses. For example, N.J.S.A. 2C:1-4(b)(2)(a) states that "[a]n offense defined by the laws of any other jurisdiction" that is punishable by "a sentence of imprisonment of one year or less, but more than 30 days, . . . shall be considered in this State to be a disorderly persons offense when a reference is made by this code, or by any other statute of this State, to such offense."

While we appreciate the trial court's worthy analysis, we do not interpret "most recent conviction" in the ten-year waiting period provision as creating a contradiction to exclude out-of-state convictions as the court maintained. At most, the statutory language creates an inconsistency—in one provision, it includes out-of-state convictions, in another, it does not. But arguably, there is no inconsistency because "conviction" simply means "conviction," in New Jersey or elsewhere, and "conviction" in the statute's venue provision is

13

impliedly qualified to mean "New Jersey conviction," while it is not so qualified in the waiting period provision.

More importantly, while it is the "general rule that a word or phrase should have the same meaning throughout the statute in the absence of a clear indication to the contrary," Perez v. Pantasote, Inc., 95 N.J. 105, 116 (1984), courts should not "accord controlling significance to a mechanical rule of statutory construction when to do so would violate the clear policies that form the foundation of" a statute, State v. O'Connor, 105 N.J. 399, 408 (1987). The trial court's reading of the statute failed to consider the Legislature's mandate that chapter 52 "be construed with the primary objective of providing relief to the reformed offender," but not "persistent violators of the law or those who associate themselves with continuing criminal activity." N.J.S.A. 2C:52-32. To be clear, the trial court's interpretation of the statute is not limited to applicants like petitioner, who some might say had only a minor additional brush with the law. The court's reading would apply equally and give relief to a petitioner with a lengthy record of out-of-state convictions in the ten years preceding an expungement petition. Reading N.J.S.A. 2C:52-5.3(b) to permit the expungement of an unlimited number of convictions of a person who has continued to violate the law is plainly contrary to N.J.S.A. 2C:52-32. Had the

14

Legislature intended to exclude a person's out-of-state offenses in defining their ability to obtain "clean slate" expungement, it would have made that intention more explicit, as it did in making the prior-expungement bar inapplicable to "clean slate" expungement. N.J.S.A. 2C:52-5.3(a); see Perez v. Zagami, LLC, 218 N.J. 202, 216 (2014) (recognizing the Legislature does not "hide elephants in mouseholes" (quoting Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 468 (2001))).

In her merits brief, petitioner acknowledges "that the legislative intent of the '[c]lean [s]late' statute is to provide rehabilitated individuals the opportunity to succeed by removing barriers" presented by past convictions. But the question here is not whether petitioner is "a rehabilitated individual who . . . deserves an expungement," as she argues, but whether this court should accept a construction of the "clean slate" statute that would give relief to not only her, but also to individuals who have not reformed and have repeatedly violated the law out-of-state since their last New Jersey conviction. Our answer is unequivocally no.

### B.

Assuming arguendo the trial court's and petitioner's interpretations of the "clean slate" statute were a fair reading of its plain language, which excludes

consideration of her Virginia conviction in expunging her New Jersey convictions, we agree with the State that it would "lead[] to inconsistent and absurd results."

Applying the trial court's plain-meaning interpretation is contrary not only to the general purpose of the expungement statutes, but also to the apparent design of the "clean slate" statute as an alternative to ordinary expungement, one that balances comparatively looser eligibility requirements with a stricter waiting period. As this court has noted with respect to an ordinary expungement, the intended "function of the original ten-year waiting period"— which was later amended down to five years, N.J.S.A. 2C:52-2(a)—for ordinary expungement "was to increase the likelihood that a beneficiary of expungement had permanently turned away from criminal activity and will not re-offend." LoBasso, 423 N.J. Super. at 491.

The Legislature's apparent intention in creating the "clean slate" option was to expand eligibility while ensuring, with a harsher waiting period, that only the least likely to re-offend could benefit from it. Allowing a continuous offender to expunge all their New Jersey convictions simply because their most recent crimes occurred out of state would completely undermine this design. It would also, as the State argues, disadvantage New Jersey residents over non-

A-0363-22

New Jersey residents for no conceivable reason.  As a matter of common sense, petitioner should not be rewarded through an expungement of her New Jersey criminal record for what amounts to a disorderly persons offense because the offense took place in another state.  Had the disorderly persons offense been committed in New Jersey, petitioner could not have had it expunged under the "clean slate" statute.  This belies logic considering the "clean slate" statute's purpose.

Our courts have faced a similar dilemma when interpreting prior iterations of the expungement statutes to avoid an absurd result.  In State v. Josselyn, 148 N.J. Super. 538, 539-40 (Law Div. 1977), the trial court interpreted the phrase "no subsequent conviction" in the expungement statute, N.J.S.A. 2A:164-28.[4] At that time, the statute stated:

> In all cases wherein a criminal conviction has been entered against any person, and no subsequent conviction has been entered against such person, it shall be lawful after the lapse of 10 years from the date of such conviction or 10 years after the date such person completed his term of imprisonment or was released from parole, whichever is later, for the person so convicted to present a duly verified petition to the court wherein such conviction was entered, setting forth all

---

[4] "N.J.S.A. 2A:164-28 . . . was the applicable expungement statute prior to the enactment of Title 2C of the penal code in 1979."  In re Ross, 400 N.J. Super. 117, 122 (App. Div. 2008).

the facts in the matter and praying for the relief provided for in this section.

> [Josselyn, 148 N.J. Super. at 539-40 (quoting N.J.S.A. 2A:164-28 (1977)).]

The court determined that "no subsequent conviction" included out-of-state convictions. Id. at 540. The court reasoned that the alternative "would enable an individual with a single criminal conviction in this State, but . . . subsequent judgments of conviction rendered against him within the ten-year period in every other jurisdiction of this nation, to petition the New Jersey courts" for expungement, an "absurd" result that ran counter to the statute's purpose to give relief to the reformed. Id. at 540-41.[5]

Likewise, we addressed out-of-state convictions in State v. Ochoa, 314 N.J. Super. 168, 170-73 (App. Div. 1998). We considered whether out-of-state disorderly persons offenses impacted expungement eligibility under an earlier version of N.J.S.A. 2C:52-3, which then provided:

> Any person convicted of a disorderly persons offense or petty disorderly persons offense under the laws of this State who has not been convicted of any prior or subsequent crime, whether within this State or any

---

[5] The Legislature effectively validated the court's conclusion in Josselyn two years later when it enacted a new expungement statute making explicit that a disqualifying "prior or subsequent crime" encompassed crimes "within this State or any other jurisdiction." N.J.S.A. 2C:52-2(a) (1979).

other jurisdiction, or of another three disorderly persons or petty disorderly persons offenses, may, after the expiration of a period of 5 years from the date of his conviction, payment of fine, satisfactory completion of probation or release from incarceration, whichever is later, present a duly verified petition as provided in section [N.J.S.A.] 2C:52-7 hereof to the Superior Court in the county in which the conviction was entered praying that such conviction and all records and information pertaining thereto be expunged.

[Id. at 170 (emphasis added) (quoting N.J.S.A. 2C:52-3 (1981)).]

The issue centered on the qualifier phrase, "whether within this State or any other jurisdiction," which followed "subsequent crime" but seemed not to apply to "or of another three disorderly persons or petty disorderly persons offenses." Id. at 170-71 (quoting N.J.S.A. 2C:52-3 (1981)). We concluded "[i]t would be manifestly inconsistent with this legislative intent to expunge the New Jersey convictions of a habitual petty offender who has committed numerous petty offenses in other jurisdictions but no more than three such offenses in New Jersey." Id. at 172 (quoting N.J.S.A. 2C:52-3 (1981)).

We also rejected the notion that "a literal reading" of N.J.S.A. 2C:52-3 supported such a result, reasoning that the statute barred "expungement of convictions for disorderly persons and petty disorderly offenses if the petitioner has 'another three disorderly persons or petty disorderly persons offenses,'

19

without specifying that such offenses must have been committed within this State." Ibid. (quoting N.J.S.A. 2C:52-3 (1981)). Notwithstanding that the statute expressly referred to convictions for crimes "'whether within this State or any other jurisdiction,' without repeating this phrase in regard to other convictions for disorderly persons and petty disorderly persons offenses," the court declined "to construe this omission as an affirmative expression of a legislative intent that convictions of disorderly persons and petty disorderly persons in other jurisdictions should be disregarded." Id. at 172-73. The current version of the statute now makes clear that disorderly persons convictions "whether within this State or any other jurisdiction" are counted in determining eligibility. N.J.S.A. 2C:52-3.

As in Ochoa, the "clean slate" language does not specify that the conviction in question includes out-of-state convictions, but it also does not specify "that such offenses must have been committed within this State." 314 N.J. Super. at 172; cf. N.J.S.A. 2C:52-5.3. Like in Ochoa, there also is a strong, if not conclusive, textual argument that the disputed language nevertheless excludes out-of-state convictions. See Goldhagen v. Pasmowitz, 247 N.J. 580, 600 (2021) ("When 'the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded.'" (quoting

In re Plan for Abolition of Council on Affordable Hous., 214 N.J. 444, 470 (2013))). Furthermore, similar to Ochoa, that argument must fail given the Legislature's clear directive that the expungement statutes be construed to give relief to the reformed "but not to create a system whereby persistent violators of the law . . . have a regular means of expunging their police and criminal records." N.J.S.A. 2C:52-32.

Our Supreme Court has concluded that "[t]he Legislature is presumed to be 'thoroughly conversant with its own legislation and the judicial construction placed thereon.'" Chase Manhattan Bank v. Josephson, 135 N.J. 209, 239-40 (1994) (quoting Quaremba v. Allan, 67 N.J. 1, 14 (1975)). When our Legislature has not specified whether out-of-state convictions are considered regarding the availability of expungement, the courts have construed the expungement statutes to declare that they do. E.g., Ochoa, 314 N.J. Super. at 172-73; Josselyn, 148 N.J. Super. at 539-40. We should not assume the Legislature intended we would rule any differently here.

Finally, nothing in the history of the "clean slate" statute's enactment supports the trial court's interpretation. Statements from the Governor's Office and legislators in support of the enactment are consistent with the purpose of the expungement statutes as expressed in N.J.S.A. 2C:52-32. The Governor's

Office's press release refers to the "clean slate" expungement process as for those "who have not committed an offense in ten years." Senate President Stephen M. Sweeney, who sponsored the "clean slate" bill, S. 4154 (2018), said that "clean slate" was for "former offenders." Assemblywoman Verlina Reynolds-Jackson stated the process would "bring us a step closer to social equity and social justice for offenders who have not committed a law violation in years." We are thus convinced that, given the clear intent of the "clean slate" statute, expunging petitioner's New Jersey criminal record would result in an absurd result because her Virginia conviction occurred within ten years of her petition for expungement.

Reversed and remanded to the trial court to enter an order vacating its expungement order.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0363-22