**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A- 1378-23

IN THE MATTER OF THE
EXPUNGEMENT OF THE
CRIMINAL/JUVENILE
RECORDS OF R.G.C.[1]

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **April 13, 2026** |
| APPELLATE DIVISION |

Argued January 8, 2026 – Decided April 13, 2026

Before Judges Mawla, Marczyk and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. XP-23-002199.

Michele E. Friedman, Assistant Deputy Public Defender, argued the cause for appellant R.G.C. (Jennifer N. Sellitti, Public Defender, attorney; Michele E. Friedman, of counsel and on the briefs).

Michael R. Philips, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Mark Musella, Bergen County Prosecutor, attorney; Michael R. Philips, of counsel and on the brief).

The opinion of the court was delivered by

BISHOP-THOMPSON, J.A.D.

---

[1]  We use petitioner's initials pursuant to <u>Rule</u> 1:38-3(c)(7).

In this appeal of first impression, we must determine the meaning of "willful noncompliance" in the "clean slate" statute, N.J.S.A. 2C:52-5.3(c), which permits an expungement of a New Jersey criminal record if ten years have passed "from the date of the [petitioner's] most recent conviction," N.J.S.A. 2C:52-5.3(b), when restitution has not been fully made. The motion court denied petitioner's second petition for expungement without prejudice after determining her failure to pay restitution upon release from prison constituted willful noncompliance. Petitioner contends her application should have been granted because more than ten years have passed since her release and her failure to satisfy the restitution obligation was not willful. Absent competent and credible evidence of petitioner's inability to satisfy her restitution obligation, we conclude her failure to pay was a deliberate act made in conscious violation or disregard of the civil judgment, and affirm.

I.

In 2007, petitioner pleaded guilty to second-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a), and consented to pay restitution to her victims. Prior to sentencing, an asset investigation revealed petitioner had no assets or property to make the victims whole. The judgment of conviction ordered petitioner to pay $278,177.99 in restitution, pursuant to the terms of the restitution order, which was entered as a civil judgment on June 29, 2007.

By 2023, more than $266,000 in restitution remained unpaid. Petitioner's initial application for clean slate expungement was denied on April 6, 2023. On August 17, 2023, petitioner filed a second application for clean slate expungement. Petitioner argued her failure to comply with the restitution order was not willful, citing her deportation to Italy in 2017, her subsequent relocation to Canada, and, as a non-citizen, she received only minimal public assistance. She further argued significant medical issues—including "absence seizures, fibrocystic breast disease . . . ovarian cysts, hypertension, type II diabetes, tympanosclerosis, [e]dema, [post-traumatic stress disorder], [depressive] disorder[,] and general anxiety disorder"—impeded her ability to support herself. Petitioner did not submit any documentation to substantiate her reasons for noncompliance with the civil judgment.

The State objected to the petition, seeking payment of petitioner's outstanding restitution obligation. It contended petitioner paid restitution only through mandatory inmate payments and garnished tax refunds collected during her incarceration. However, after her release from prison in 2010, petitioner made no further payments.

On December 12, 2023, the motion court denied the petition for expungement without prejudice, finding petitioner had not met her burden to prove eligibility pursuant to In re Kollman, 210 N.J. 557 (2012). Referencing

N.J.S.A. 2C:52-5.3(b), the order stated, "[petitioner] failed to establish that her non-payment was due to reasons other than willful non[]compliance." The court reasoned:

> In fact, this [c]ourt finds that this [petitioner] took those monies by means of deceptive business practices for which she previously pled guilty. This [c]ourt finds that the [petitioner] at one point had control over and access to all those monies. Thus, she has had every opportunity to repay that restitution in full many years ago. Her alleged disabilities or diminished ability to work presently are irrelevant. This [c]ourt finds that [petitioner]'s non-payment of restitution is willful non[]compliance.

The court further stated: "Based upon its findings, this [c]ourt will not grant any new expungement applications by this [petitioner] for similar relief unless all restitution is paid in full and until after the statutory waiting period of ten years has lapsed."

II.

On appeal, petitioner argues the motion court abused its discretion by finding she willfully "refused" to pay restitution. She asserts the pre-sentence investigation revealed her inability to pay restitution as represented by the State at sentencing, resulting in the entry of the civil judgment. Lastly, petitioner contends the court failed to properly consider her inability to work and receipt of public assistance.

4

Generally, we review the denial of expungement for an abuse of discretion. Kollman, 210 N.J. at 577. "Under that standard, a reviewing court should not substitute its judgment if the trial court's ruling was within 'a range of acceptable decisions.'" Ibid. (quoting Parish v. Parish, 412 N.J. Super. 39, 73 (App. Div. 2010)).

Our review of statutory interpretation is "de novo, unconstrained by deference to the decisions of the trial court." In re Expungement Application of K.M.G., 477 N.J. Super. 167, 173 (App. Div. 2023) (quoting State v. Grate, 220 N.J. 317, 329 (2015)). Also, the trial court's interpretation of the expungement statute is reviewed de novo. N.J. Div. of Child Prot. & Permanency v. A.P., 258 N.J. 266, 278 (2024).

N.J.S.A. 2C:52-1 to -32.1 governs expungement and these provisions were intended by the Legislature "to establish a comprehensive statutory scheme for the expungement of criminal records" and create "an equitable system of expungement of indictable and nonindictable offenses as well as of arrest records." State v. Gomes, 253 N.J. 6, 21 (2023) (quoting State v. T.P.M., 189 N.J. Super. 360, 364 (App. Div. 1983)) (internal quotation marks omitted). In essence, our expungement laws are remedial in nature, intended to provide "relief to the reformed offender" and minimize the collateral

consequences of criminal convictions.  Id. at 21-22; see also K.M.G., 477 N.J. Super. at 176.

In 2019, the Legislature amended the expungement laws and included the clean slate provision under N.J.S.A. 2C:52-5.3.  This legislative measure was intended to expand access to expungement and is designed to be inclusive, not exclusive, thereby offering relief to persons who might otherwise be ineligible for expungement.  See K.M.G., 477 N.J. Super. at 175-76.

N.J.S.A. 2C:52-5.3(b) sets forth the parameters for clean slate expungement, and provides the petitioner "may present the expungement application after the expiration of a period of ten years from the date of the . . . most recent conviction, payment of any court-ordered financial assessment, satisfactory completion of probation or parole, or release from incarceration, whichever is later."  This paragraph defines "court-ordered financial assessment" as "any fine, fee, penalty, restitution, and other form of financial assessment imposed by the court as part of the sentence for the conviction or convictions that are the subject of the application."

In this context, where a petitioner has not fully satisfied such financial assessments, N.J.S.A. 2C:52-5.3(c) permits the granting of expungement provided the ten-year requirement is met and the petitioner demonstrates, by a preponderance of the evidence, their failure to pay was "due to reasons other

than willful noncompliance." Simply put, the statute allows for expungement of the conviction if the court finds there is no willful noncompliance and the ten-year time requirement is otherwise satisfied. However, at the time of expungement, a petitioner's obligation to pay is entered as a civil judgment. N.J.S.A. 2C:52-14 further requires a court to deny expungement if: any statutory prerequisite remains unsatisfied, including applications sought under the clean slate provision; there is any other statutory ground for denial; or public need outweighs the benefits of expungement. See In re Expungement Petition of D.H., 204 N.J. 7, 18-20 (2010).

A petitioner bears the initial burden of demonstrating eligibility by a preponderance of the evidence. Id. at 18. Once this burden is met, it "shifts to the State to 'demonstrate[] by a preponderance of the evidence that there is a statutory bar or that the petition should not be granted.'" Ibid. (alteration in original) (quoting In re Expungement Application of G.R., 395 N.J. Super. 428, 431 (App. Div. 2007)).

It is undisputed petitioner has satisfied the ten-year time requirement to be eligible for expungement under N.J.S.A. 2C:52-5.3(b). However, petitioner's substantial restitution obligation remains outstanding.

Thus, we consider whether petitioner has met her burden of proving her failure to pay restitution was not willful under N.J.S.A. 2C:52-5.3(c). While

Kollman predates the clean slate expungement statute and is not directly controlling as to the construction of N.J.S.A. 2C:52-5.3, it remains instructive in several respects. 210 N.J. 557. Specifically, Kollman elucidates the general burden-shifting framework in expungement proceedings, underscores the necessity for petitioners to present competent and credible evidence, and reinforces the principle expungement statutes are not intended to provide relief in the absence of genuine rehabilitation and compliance with statutory standards. Id. at 570-74.

The clean slate expungement is a relatively new remedy, and the term "willful noncompliance" is not defined in the statute. Moreover, the provisions do not define "willful," but our Supreme Court has interpreted the term in other contexts; namely, contempt sanctions, where the Court defined "willful" as conduct that is "deliberate, voluntary, or intentional, but not necessarily malicious." State v. Moran, 202 N.J. 311, 323 (2010) (citations and internal quotation marks omitted).

Willful noncompliance entails a deliberate or intentional act in which the individual can choose their course of conduct. In the context of family matters and Rule 1:10-3 hearings, a key factor is whether the individual had the ability to comply with the court order but chose not to. Pasqua v. Council, 186 N.J. 127, 140-41 (2006). In Milne v. Goldenberg, we affirmed the trial court's

finding of willful noncompliance where a party "had 'a significant amount of money . . . [at] her disposal, while she was not complying with [certain] court orders'" and had "intentionally 'prioritize[d]' her funds and ignored the obligation." 428 N.J. Super. 184, 199 (App. Div. 2012). We have held the objective of a compliance hearing "is simply to determine whether that failure was excusable or willful"; in other words, whether "the obligor was able to pay and did not." Schochet v. Schochet, 435 N.J. Super. 542, 548 (App. Div. 2014).

The record demonstrates petitioner's only payments toward restitution were garnishments collected during her period of incarceration. Petitioner presented no competent evidence to demonstrate her inability to pay during the seven years she remained in the United States following her release, nor during her time residing in Italy and Canada. Similarly, her claims of hardship, medical issues, and reliance on public assistance are unsupported by any competent and credible evidence in the record.

The determination of whether a petitioner is unable to pay full restitution is a fact-sensitive analysis, requiring the careful consideration of all competent and credible evidence presented by the parties. Unsupported assertions of hardship or indigency—without documentation or affidavits—are insufficient to rebut a finding of willfulness. See R. 1:6-6; N.J.S.A. 2C:52-8; see also

Kollman, 210 N.J. at 572-74. Absent such credible and competent evidence demonstrating an inability to pay, petitioner's assertion the failure to satisfy restitution was "nonwillful" fails. Accordingly, we hold petitioner's failure to satisfy restitution following her release from prison was willful—a deliberate act in conscious violation or disregard of the judgment. See Callahan v. Tri-Borough Sand & Stone, 478 N.J. Super. 505, 514 (App. Div. 2024).

We conclude the motion court properly exercised its discretion in ruling petitioner failed to establish by a preponderance of the evidence her inability to satisfy the judgment was not willful. The court's finding of willful noncompliance is supported by both the record and the governing law. See Balducci v. Cige, 240 N.J. 574, 595 (2020); Gnall v. Gnall, 222 N.J. 414, 428 (2015).

To the extent we have not addressed any of petitioner's remaining arguments, we are satisfied they lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A- 1378-23